IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN FRIAR                                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 1:17-CV-101-SA-DAS

SYNTRON MATERIAL HANDLING, LLC                               DEFENDANT

ORDER AND MEMORANDUM OPINION

After filing a charge of discrimination with the Equal Employment Opportunity

Commission and receiving a "right-to-sue" letter, John Friar filed his Complaint [1] in this Court

alleging that his former employer, Syntron Material Handling, LLC, wrongfully fired him because

of his race and age. Friar is an African American male over the age of sixty. Now before the Court

is Syntron's Motion for Summary Judgment [14] requesting judgment in its favor, and dismissal

of all of Friar's claims with prejudice.[1] The issues are fully briefed and ripe for review.

*Factual and Procedural Background*

Friar worked for Syntron and its predecessor company from May, 1974 until he was

terminated in May, 2015. At the time of his termination, Syntron informed Friar that he was being

terminated as part of a reduction-in-force along with about twenty other employees. Syntron

presented a Severance and Release Agreement to Friar, which he executed. Syntron also presented

severance benefits totaling $16,628.76 to Friar, which he accepted.

---

[1] Syntron's Motion is styled as a "Motion to Dismiss, or in the alternative, Motion for Summary Judgment". Because both Parties presented matters outside the pleadings, and both parties have been given the opportunity to present all pertinent material, the Court will treat the motion as one for summary judgment. *See* FED. R. CIV. P. 12 (d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

According to Friar, he was told during his termination meeting that his termination did not have anything to do with his performance, and that his position was simply being eliminated as part of a company-wide reduction-in-force. Shortly after his termination, Friar observed a classified advertisement seeking applicants for his former position. Friar now alleges that the real reason Syntron fired him was because of his race and age, and that the reduction-in-force justification provided to him was mere pretext to hide the real reason. Friar further alleges that he would not have signed the Severance and Release Agreement if he had known that his position was not being eliminated, and that he was instead being fired because of his age, race, or performance.

Syntron argues that the Severance and Release Agreement bars Friar's complaint because he waived any right to sue under the Agreement. Thus, the issue now before the Court is whether there is a genuine dispute of material fact as to both whether the Agreement is valid, and if so, whether it acts to bar Friar's claims.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the

absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party

must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine

issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual

controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have

submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts

exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Severance and Release Agreement*

As this Court, and the Fifth Circuit, has previously held, "A release waiving rights under

Title VII must be both knowing and voluntary." *Young v. Domtar Paper Co., LLC*, No. 1:11-CV-

236-SA, 2012 WL 2160442, at *2 (N.D. Miss. June 13, 2012) (quoting *Rogers v. Gen. Elec. Co.,*

781 F.2d 452, 454 (5th Cir. 1986)). An employee may validly release only those Title VII claims

arising from "discriminatory acts or practices which antedate the execution of the release." *Id.*

Under this approach, the moving party has the burden of "establish[ing] that his opponent signed

a release that addresses the claims at issue, received adequate consideration, and breached the

release". *Id*. (citing *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994)). Once

this is established, "the opponent has the burden of demonstrating that the release was invalid

because of fraud, duress, material mistake, or some other defense." *Id.* The Court examines the

totality of the circumstances to determine whether the releasor has established an appropriate

defense. *Id.* (citing *O'Hare v. Global Natural Res., Inc.*, 898 F.2d 1015, 1017 (5th Cir. 1990)). The

following factors are relevant in determining whether the employee has established a defense to

the validity of the release:

> (1) the plaintiff's education and business experience, (2) the amount
> of time the plaintiff had possession of or access to the agreement

before signing it, (3) the role of [the] plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id*. (citing *Smith v. Amedisys, Inc.*, 298 F.3d 434, 441 (5th Cir. 2002)). "No single factor is necessarily dispositive in this analysis." *Id*. (citing *Uherek v. Houston Light & Power Co.,* 997 F. Supp. 789, 792 (S.D. Tex. 1998)).

Any waiver must also be "knowing and voluntary" within the context of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* as amended by the Older Workers Benefits Protection Act (OWBPA) 29 U.S.C. § 626(f)(1). Under these statutes, "to constitute a knowing and voluntary waiver, the release must meet specific statutory requirements such as specifically referring to the ADEA, advising the individual to consult with an attorney, and providing a grace period to consider signing the agreement." *McDaniel v. Momentive Specialty Chemicals, Inc.*, No. 4:13-CV-1235, 2014 WL 2722746, at *2 (S.D. Tex. May 29, 2014) (citing *Blakeney v. Lomas Info. Sys., Inc.*, 65 F.3d 482, 484 (5th Cir. 1995); 29 U.S.C. §§ 626(f)(1)(B), (E), (F)). The ADEA requirements are the "minimum" that need to be established for a waiver to be considered knowing and voluntary. *Id*. Meeting those requirements "does not necessarily compel the conclusion that a waiver was made knowingly and voluntarily." *Id*. (citing *Griffith v. Novation, LLC*, 2006 WL 1374017, *2 (N.D. Tex. May 18, 2006) (gathering cases)).

Syntron argues that the Agreement in this case fully complied with the requirements of the ADEA and that all of the other factors, from *Smith*, relevant to validity militate in its favor. In response, Friar argues that he would not have signed the release if he had known that the reason he was selected for the reduction-in-force was his performance, and that the release failed to comply with the statutory requirements.

Turning first to Friar's age discrimination claim, the Court notes that one of the "minimum requirements" mandated by the ADEA involves the disclosure of certain information by the employer during the employee's consideration of the waiver agreement. The Act states, in relevant part:

> (H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer [. . .] informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to--
>> (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
>> (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626 (f)(1)(H). Friar argues that the reduction-in-force through which he was terminated is specifically the type of group termination contemplated by this section of the statute, and that there is a question of fact as to whether Syntron made the requisite information available.

In a similar but contrasting case, *Hartnett v. Chase Bank of Texas Nat. Association*, a district court in Texas found that a release did comply with this section of the Act because the release itself stated the availability of the information, and by signing the release, the plaintiff acknowledged the same. 59 F. Supp. 2d 605, 615 (N.D. Tex. 1999).[2]

---

[2] The following is an excerpt from *Hartnett* "When Plaintiff retired from TCB pursuant to the early retirement package offered in April 1992, he signed a release waiving all claims against TCB for conduct related to his employment or separation therefrom, including ADEA claims. Plaintiff argues that this release is invalid because TCB did not provide him with the information required by 29 U.S.C. § 626(f)(1)(H) regarding which classes or groups of employees to whom the early retirement plan was being offered, as well as the job titles and ages of all individuals eligible and ineligible for the program. Plaintiff admits that TCB offered to provide him with this information and does not claim that he asked for the information and was denied it. The release Plaintiff signed acknowledges the availability of this information. The court finds that the release signed by Plaintiff complies with this requirement of the ADEA." *Hartnett*, 59 F. Supp. 2d at 615.

The Court reviewed the release from the instant case, and it contains no such reference. Nor has Syntron alleged or brought forth any evidence that the information exists, much less that it was shared or made available to Friar. Thus, it appears based on the record at this time, that the release failed to comply with the mandates of the ADEA. *See* 29 U.S.C. § 626 (f)(1)(H);

Syntron next argues that because Friar kept the severance benefits, he ratified the agreement and is barred from challenging its validity. In *Oubre v. Entergy Operations, Inc.*, the Supreme Court squarely rejected this argument, holding that if a release fails to comply with the statutory requirements, a failure to return severance benefits cannot bar an ADEA claim. 522 U.S. 422, 424, 118 S. Ct. 838, 840, 139 L. Ed. 2d 849 (1998) ("The employer also insists the release bars the action unless, as a precondition to filing suit, the employee tenders back the moneys received. We disagree and rule that, as the release did not comply with the statute, it cannot bar the ADEA claim."). So too, the relevant portion of the Code of Federal Regulations states with respect to ADEA claims, "Retention of consideration does not foreclose a challenge to any waiver agreement, covenant not to sue, or other equivalent arrangement; nor does the retention constitute the ratification of any waiver agreement, covenant not to sue, or other equivalent arrangement." 29 C.F.R. § 1625.23.

Because there is a question of material fact as to whether the release in this case complied with the mandates of the ADEA, summary judgment is not appropriate on this claim at this time.

The application of the relevant standard to the question of whether Friar waived his right to pursue his race discrimination claim is not as straightforward. As outlined above, although the waiver analyses relative to Title VII and the ADEA both use the terminology "knowing and voluntary," the analysis of waiver in the race discrimination context is much more flexible and involves broader factors than the statutory regime imposed by the ADEA. *See Smith*, 298 F.3d at

441. The analysis is even more complex considering the extent to which the factual bases for both of Friar's claims are intertwined. The Court also notes that this summary judgment request, converted from a motion to dismiss, comes very early in this case before either party has had the benefit of any discovery. Finally, the Court notes that Syntron did not brief its arguments for dismissal of Friar's claims separately, but merely presented general arguments as to the validity of the release.

For all of these reasons, the Court finds that the best course of action at this time is to exercise its discretion and deny summary judgment on Friar's race discrimination claim as well. *See Kunin v. Feofanov*, 69 F.3d 59, 62 (5th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986) ("[E]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'a better course would be to proceed to a full trial.'").

To be clear, the Court does not conclusively hold here that Friar did *not* waive his right to sue on either claim under the agreement. The Court holds that genuine issues of material fact underlying the question of waiver preclude summary judgment at this time.

*Conclusion*

For all of the reasons fully discussed above, the Defendant's Motion for Summary Judgment [14] is DENIED without prejudice.

It is so ORDERED on this the 1st day of August, 2018.

 /s/ Sharion Aycock
UNITED STATES DISTRICT COURT JUDGE